## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MISSOURI
## SOUTHEASTERN DIVISION

| | |
|---|---|
| LUKE C. CODY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:19-CV-210 RLW |
| | ) |
| SAINT. GENEVIEVE COUNTY JAIL, | ) |
| et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court upon the motion of plaintiff Luke C. Cody, a former inmate incarcerated at St. Genevieve County Jail, for leave to commence this action without payment of the required filing fee. Because plaintiff has been released from custody since the filing of his complaint in this action, the Court will not assess a filing fee in this action. *See* 28 U.S.C. § 1915(b)(1). Furthermore, based upon a review of the complaint, the Court finds that the complaint should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

### 28 U.S.C. § 1915(e)

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court may dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. An action is frivolous if "it lacks an arguable basis in either law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 328 (1989). An action is malicious when it is undertaken for the purpose of harassing litigants and not for the purpose of vindicating a cognizable right. *Spencer v. Rhodes*, 656 F. Supp. 458, 461-63 (E.D.N.C. 1987), *aff'd* 826 F.2d 1059 (4th Cir. 1987).

To determine whether an action fails to state a claim upon which relief can be granted, the Court must engage in a two-step inquiry. First, the Court must identify the allegations in the

complaint that are not entitled to the assumption of truth. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009). These include "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Id.* at 1949. Second, the Court must determine whether the complaint states a plausible claim for relief. *Id.* at 1950-51. This is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950. The plaintiff is required to plead facts that show more than the "mere possibility of misconduct." *Id.* The Court must review the factual allegations in the complaint "to determine if they plausibly suggest an entitlement to relief." *Id.* at 1951. When faced with alternative explanations for the alleged misconduct, the Court may exercise its judgment in determining whether plaintiff's proffered conclusion is the most plausible or whether it is more likely that no misconduct occurred. *Id.* at 1950, 1951-52.

## The Amended Complaint

Plaintiff, a former inmate at St. Genevieve County Jail, filed his original complaint in this action on November 20, 2019, alleging violations of his civil rights pursuant to 42 U.S.C. § 1983. On November 26, 2019, the Court reviewed plaintiff's original complaint and ordered plaintiff to amend his pleading on a court-provided form within thirty (30) days of the date of that Memorandum and Order.

Plaintiff filed an amended complaint in this action on December 9, 2019. He filed three supplements to his complaint on January 15, 2020, January 27, 2020 and March 10, 2020. Plaintiff was released from custody on or about July 17, 2020.

Plaintiff's amended complaint alleges violations of his civil rights pursuant to 42 U.S.C. § 1983 that occurred during his incarceration at Saint Genevieve County Jail. He names Saint Genevieve County Jail and Nurse Melissa as defendants in this action. Defendant Nurse Melissa is named in her official capacity only.

- 2 -

Plaintiff alleges that he arrived at Saint Genevieve County Jail in October of 2018 and "his concerns were ignored." Plaintiff does not indicate what "concerns" he purportedly had at that time or to whom he allegedly relayed his concerns.[1]

Plaintiff states that at some unidentified date, he "fell off the top bunk" and he "woke up in Saint Genevieve Hospital covered in blood." He claims that he needed staples in his head as a result of the fall.

Plaintiff alleges that he suffered, at some unidentified time period, a joint separation and nerve damage in his left shoulder, as well as memory loss. He states that "a week later I transferred, my medical records did not follow me like they [were supposed] to." Plaintiff complains that as a result of this incident, he failed to have psychiatric medications or pain medication when he was at Grady County Jail in Oklahoma. Plaintiff does not identify the time period in which this allegedly occurred, nor does he allege who was purportedly at fault for this alleged occurrence. Plaintiff does state that he believes defendant Nurse Melissa "tried to cover it up." Plaintiff does not indicate how or why he believes this.

Plaintiff claims that in October of 2019, he returned to Saint Genevieve County Jail and Nurse Melissa told plaintiff that the Jail does not give out the drug Trileptal[2] when he came to sick call for his nerve pain medication. He was given Tylenol instead, which plaintiff asserts that he was not supposed to take due to his Hepatitis C. Plaintiff alleges that despite what Nurse Melissa told him, numerous white inmates were receiving Trileptal.[3]

---

[1]In his original complaint plaintiff asserted that he arrived at the Saint Genevieve County Jail in October of 2018. He stated that in booking he told an unnamed Correctional Officer that he needed to be assigned to a bottom bunk because of back pain, psych meds and because he sometimes passes out. Plaintiff asserted that he was "ignored" and assigned to a top bunk. Plaintiff was warned in the November 26, 2019 Memorandum and Order requiring plaintiff to amend his complaint that the amended complaint would replace the original in all respects. *E.g., In re Wireless Telephone Federal Cost Recovery Fees Litigation,* 396 F.3d 922, 928 (8th Cir. 2005). Nonetheless, the Court will address this claim as if it was set forth in the amended complaint.

[2]Trileptal is an anti-seizure drug used in the treatment for epilepsy, but oftentimes used off-label for other treatments such as bi-polar disorder or neuralgia or nerve pain.

[3]Plaintiff does not indicate his race in the amended complaint.

Plaintiff states that he is always in pain from his shoulder, back and hips from his arthritis. He complains that he sees other inmates getting X-rays, Trileptal and Ivory Soap who are indigent, but he has been denied these things and simply given Tylenol by both Dr. Pewitt and Nurse Melissa. Although he does not complain that he believes he has been denied these things because he is black, **as plaintiff has not revealed his race**, he does state that these other inmates are white. Plaintiff simply states that his needs have been ignored by Nurse Melissa and Dr. Pewitt, who has not been named as a defendant in this action.[4] Plaintiff also states that due to the pain he has had depression and thoughts of suicide. Plaintiff admits that he is receiving psychiatric medication.

For relief, plaintiff seeks monetary damages in an amount of $300,000, $100,000 charitable contribution to the Jail for mentally ill inmates, surgery on his left shoulder and access to the medicine Trileptal.

## Discussion

Plaintiff brings this action pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his medical needs. Having thoroughly reviewed and liberally construed plaintiff's amended complaint, the Court will dismiss plaintiff's claims for relief.

### A. Plaintiff's Claims Against Saint Genevieve County Jail

Plaintiff's claims against the Saint Genevieve County Jail are legally frivolous because it cannot be sued. *Ketchum v. City of West Memphis, Ark.,* 974 F.2d 81, 82 (8th Cir. 1992) (departments or subdivisions of local government are "not juridical entities suable as such."). To the extent plaintiff is attempting to hold the Jail liable for his fall from his bunk and for any other claims for relief, plaintiff is unable to do so.

---

[4]Although Dr. Pewitt was not named as a defendant in the amended complaint, the Court will address the claims against him articulated throughout the amended pleading. Because plaintiff has not stated the capacity he is bringing claims against Dr. Pewitt, the Court must assume plaintiff is alleging claims against Dr. Pewitt in his official capacity only. *Egerdahl v. Hibbing Community College,* 72 F.3d 615, 619 (8th Cir. 1995); *Nix v. Norman,* 879 F.2d 429, 431 (8th Cir. 1989).

- 4 -

As noted above, plaintiff did not include information in his amended complaint relative to the facts surrounding how the alleged fall occurred from his bunk. Additionally, in his original complaint, plaintiff asserted that he arrived at the Saint Genevieve County Jail in October of 2018, and in booking he told an unnamed Correctional Officer that he needed to be assigned to a bottom bunk because of back pain, psych meds and because he sometimes passes out. At that time, plaintiff asserted that he was "ignored" and assigned to a top bunk.

"Liability under § 1983 requires a causal link to, and direct responsibility for, the deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990), *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff). Plaintiff has failed to identify who the alleged correctional officer was who purportedly ignored his request for a lower bunk and why such a request was denied. Moreover, he has failed to name this individual in this lawsuit in their individual capacity and claim that the individual is responsible for his fall as a result of his or her failure to allow him to reside in a bottom bunk. The Jail, itself, cannot be held responsible for plaintiff's claim.

## B. Plaintiff's Official Capacity Claims against Nurse Melissa and Dr. Pewitt

Plaintiff has not alleged any facts in his complaint that would demonstrate the existence of a policy or custom of Saint Genevieve County that caused plaintiff a deprivation of his constitutional rights regarding his purported lack of medical care, let alone causally connected such facts to the defendants in the present lawsuit. *See, e.g., Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent*, 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits).

- 5 -

A local governing body such as Saint Genevieve County can be sued directly under §

1983. *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658, 690 (1978). Section

1983 may attach if the constitutional violation "resulted from (1) an official policy, (2) an

unofficial custom, or (3) a deliberately indifferent failure to train or supervise." *Mick v. Raines,*

883 F.3d 1075, 1089 (8th Cir. 2018). *See also Marsh v. Phelps Cty.,* 902 F.3d 745, 751 (8th Cir.

2018) (recognizing "claims challenging an unconstitutional policy or custom, or those based on a

theory of inadequate training, which is an extension of the same"). Thus, there are three ways in

which a plaintiff in a § 1983 can prove *Monell* liability against Saint Genevieve County.

First, a plaintiff can show the existence of an unconstitutional policy. "Policy" refers to

"official policy, a deliberate choice of a guiding principle or procedure made by the municipal

official who has final authority regarding such matters." *Corwin v. City of Independence, Mo.,*

829 F.3d 695, 700 (8th Cir. 2016). *See also Russell v. Hennepin Cty.,* 420 F.3d 841, 847 (8th Cir.

2005) ("A policy is a deliberate choice to follow a course of action made from among various

alternatives by the official or officials responsible…for establishing final policy with respect to

the subject matter in question"). For a policy that is unconstitutional on its face, a plaintiff needs

no other evidence than a statement of the policy and its exercise. *Szabla v. City of Brooklyn,*

Minn., 486 F.3d 385, 389 (8th Cir. 2007). However, when "a policy is constitutional on its face,

but it is asserted that a municipality should have done more to prevent constitutional violations

by its employees, a plaintiff must establish the existence of a 'policy' by demonstrating that the

inadequacies were a product of deliberate or conscious choice by the policymakers." *Id.* at 390.

Alternatively, a plaintiff can establish a claim of liability based on an unconstitutional

"custom." In order to do so, the plaintiff must demonstrate:

1)      The existence of a continuing, widespread, persistent pattern of unconstitutional
misconduct by the governmental entity's employees;

- 6 -

2)      Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and

3)      That plaintiff was injured by acts pursuant to the governmental entity's custom, i.e., that the custom was a moving force behind the constitutional violation.

*Johnson v. Douglas Cty. Med. Dep't,* 725 F.3d 825, 828 (8th Cir. 2013).

Finally, a plaintiff can show liability by establishing a deliberately indifferent failure to train or supervise. To do so, the plaintiff must demonstrate a "pattern of similar constitutional violations by untrained employees." *S.M. v Lincoln Cty.,* 874 F.3d 581, 585 (8th Cir. 2017).

Plaintiff's conclusory allegations regarding the purported small delay in receipt of medical care for his back pain as well as his inability to get his preferred medication and Ivory Soap and X-rays, simply do not demonstrate *Monell* liability under any of the aforementioned policy or custom definitions against defendant Saint Genevieve County. *See Ulrich v. Pope Cty.,* 715 F.3d 1054, 1061 (8th Cir. 2013) (affirming district court's dismissal of *Monell* claim where plaintiff "alleged no facts in his complaint that would demonstrate the existence of a policy or custom" that caused the alleged deprivation of plaintiff's rights). Therefore, plaintiff's claims against Saint Genevieve County individual defendants under the Eighth Amendment fail to state a claim upon which relief may be granted in their official capacities.

Furthermore, plaintiff has not alleged any facts in his complaint that would demonstrate the existence of a policy or custom that caused plaintiff a deprivation of his constitutional rights, let alone causally connected such facts to the defendants in the present lawsuit. See, e.g., *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990); *see also Martin v. Sargent,* 780 F.2d 1334, 1338 (8th Cir. 1985) (claim not cognizable under § 1983 where plaintiff fails to allege defendant was personally involved in or directly responsible for incidents that injured plaintiff); *Boyd v. Knox,* 47 F.3d 966, 968 (8th Cir. 1995) (respondeat superior theory inapplicable in § 1983 suits).

Last, the Court cannot say that plaintiff's legal conclusions that he saw white individuals get Ivory Soap and X-rays, as well as his preferred medication from Dr. Pewitt and Nurse Melissa, show an unlawful custom or practice, or at worst, an equal protection claim. Rather, these are conclusory statements that do not support a constitutional violation.

Unfortunately, plaintiff has not identified that he is a member of a suspect class, nor has he alleged that his membership in a suspect class was the purported reason for the alleged dissimilar treatment. Additionally, there is no indication that plaintiff has a fundamental right to decide when he needs an X-ray or determine what medicine he should be taking.

"The Equal Protection Clause generally requires the government to treat similarly situated people alike." *Klinger v. Dep't of Corrs.*, 31 F.3d 727, 731 (8th Cir. 1994). The dissimilar treatment of dissimilarly situated people does not violate equal protection. *Id.* As such, the first step in an equal protection case is determining whether the plaintiff has demonstrated that he or she was treated differently than others who were similarly situated. *In re Kemp*, 894 F.3d 900, 909 (8th Cir. 2018). The plaintiff must also show that "the different treatment is based upon either a suspect classification or a fundamental right." *Patel v. U.S. Bureau of Prisons*, 515 F.3d 807, 815 (8th Cir. 2008). As noted above, there is no indication in this case that plaintiff is a member of a suspect class or that the factual circumstances relate to a fundamental right that plaintiff was entitled to.

## C. If Plaintiff Had Plead Individual Capacity Claims, Such Claims Would be Subject to Dismissal

At all relevant times related to the amended complaint, plaintiff was a pretrial detainee being held at the Saint Genevieve County Jail[5], so his constitutional claims arise pursuant to the Fourteenth Amendment, rather than the Eighth Amendment. *See Morris v. Zefferi*, 601 F.3d 805,

---

[5] Plaintiff was being held at St. Genevieve County Jail on the charge of escape from custody from Dismas House, by virtue of a judgment and commitment in *United States v. Cody*, No. 4:08CR237 (E.D.Mo). *See United States v. Cody*, No. 4:19CR706 RWS (E.D.Mo).

809 (8th Cir. 2010). However, the Fourteenth Amendment provides at least as much protection to pretrial detainees as the Eighth Amendment does to convicted prisoners. *Hartsfield v. Colburn*, 371 F.3d 454, 457 (8th Cir. 2004). Accordingly, a pretrial detainee's medical claims are analyzed under the Eighth Amendment's deliberate indifference standard. *See Grayson v. Ross*, 454 F.3d 802, 808 (8th Cir. 2006). Plaintiff's individual capacity claims against defendants Nurse Melissa and Dr. Unknown Pewitt for deliberate indifference to his medical needs must be dismissed.

The government has an obligation to provide medical care to those whom it is punishing by incarceration. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To demonstrate constitutionally inadequate medical care, the inmate must show that a prison official's conduct amounted to deliberate indifference. *Dulany v. Carnahan*, 132 F.3d 1234, 1237-38 (8th Cir. 1997).

To prevail on an Eighth Amendment claim of deliberate indifference, a plaintiff must prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts v. Kopel*, 917 F.3d 1039, 1042 (8th Cir. 2019). "A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Coleman v. Rahija*, 114 F.3d 778, 784 (8th Cir. 1997). Deliberate indifference can include the intentional denial or delay of access to medical care, or the intentional interference with treatment or prescribed medication. *Vaughn v. Lacey*, 49 F.3d 1344, 1346 (8th Cir. 1995). However, a showing of deliberate indifference requires more than a mere disagreement with treatment decisions and is greater than gross negligence. *Gibson v. Weber*, 433 F.3d 642, 646 (8th Cir. 2006).

Here, plaintiff alleges that Nurse Melissa at Saint Genevieve County Jail and Dr. Pewitt failed to provide him with his preferred medication. While plaintiff has clearly established a serious medical need, his allegations do not state a claim of deliberate indifference against either defendant.

First, plaintiff's pleading relies almost entirely on conclusory language and on restatements of the elements of a cause of action. He states that both Nurse Melissa and Dr. Pewitt were deliberately indifferent and violated his constitutional rights but makes little effort to articulate exactly what they did or did not do to constitute such indifference. Courts are not required to accept such pleadings as true. *See Wiles v. Capitol Indem. Corp.*, 280 F.3d 868, 870 (8th Cir. 2002) ("While the court must accept allegations of fact as true…the court is free to ignore legal conclusions, unsupported conclusions, unwarranted inferences and sweeping legal conclusions cast in the form of factual allegations").

Second, plaintiff does not show the direct responsibility of each defendant for allegedly violating his constitutional rights. *See Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990) (stating that § 1983 liability "requires a causal link to, and direct responsibility for, the alleged deprivation of rights"). Plaintiff indicates that he was told that the Jail no longer prescribes Tileptal as an approved medicine. What he fails to establish, however, is how Dr. Pewitt or Nurse Melissa is responsible for this result. Additionally, plaintiff fails to allege that he was not receiving any pain treatment for his back, neck and shoulder by defendants. In fact, plaintiff admits that he was receiving treatment for his pain. It was simply not plaintiff's preferred treatment.

Finally, when the amended complaint is read as a whole, it becomes clear that plaintiff has not been denied medical care for his shoulder, back, arthritis or his psychiatric illnesses. Rather, he acknowledges that he has been given psychiatric medicine as well pain medication. Instead, the crux of his amended complaint is that he has not been given a particular type of medicine, specifically Trileptal. Inmates are not allowed to choose their own course of treatment. *Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995); *see also Rowe v. Norris*, 198 Fed.Appx. 579, 581 (8th Cir. 2006) (no Eighth Amendment violation because inmate disagreed with physician's choice of medication); *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000) ("mere

disagreement with treatment decisions does not rise to the level of a constitutional violation"); *Long v. Nix*, 86 F.3d 761, 765 (8th Cir. 1996) ("Nothing in the Eighth Amendment prevents prison doctors from exercising their independent medical judgment. Prisoners do not have a constitutional right to any particular type of treatment. Prison officials do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment"); *Smith v. Marcantonio*, 910 F.2d 500, 502 (8th Cir. 1990) (claims properly dismissed because they were based on "nothing more than mere disagreement with the course of his medical treatment")). As such, plaintiff's claims are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B).

As noted above, deliberate indifference requires a plaintiff to prove that he suffered from an objectively serious medical need, and that prison officials actually knew of and disregarded that need. *Roberts*, 917 F.3d at 1042. This requires an inmate to demonstrate that a prison health care provider's actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Jackson v. Buckman*, 756 F.3d 1060, 1066 (8th Cir. 2014). To that end, "deliberate indifference requires a highly culpable state of mind approaching actual intent." *Kulkay v. Roy*, 847 F.3d 637, 643 (8th Cir. 2017).

In order to prove deliberate indifference, plaintiff is required to show more than a "mere disagreement with treatment decisions." *See Krout v. Goemmer*, 583 F.3d 557, 567 (8th Cir. 2009). Here, he has only stated a preference for one type of treatment over another, without attempting to demonstrate why the treatment he is receiving is improper. For these reasons, plaintiff's individual capacity claims against defendants Nurse Melissa and Dr. Pewitt must be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's request to proceed in forma pauperis is **GRANTED**.

- 11 -

**IT IS FURTHER ORDERED** that because plaintiff was released from custody prior to in forma pauperis review of the amended complaint no initial partial filing fee will be assed in this action.

**IT IS FURTHER ORDERED** that this action is **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B).

**IT IS FURTHER ORDERED** that plaintiff's motion for appointment of counsel [Doc. #7] is **DENIED AS MOOT**.

**IT IS FURTHER ORDERED** that an appeal of this action would not be taken in good faith.

An Order of Dismissal will accompany this Memorandum and Order.

Dated this /0th day of August, 2020.

RONNIE L. WHITE
UNITED STATES DISTRICT JUDGE